UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JUDY PYATT,

      Plaintiff,

v.

                                    Civil Action 2:09-cv-00475
                                    Judge Algenon L. Marbley
                                    Magistrate Judge E.A. Preston Deavers

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.


### REPORT AND RECOMMENDATION

This matter is before the Court for consideration of Plaintiff's Motion for Attorney Fees Under the Equal Access to Justice Act (ECF No. 28). Plaintiff moves for attorney fees as a result of this Court's decision to remand. The Court remanded this case because of the Administrative Law Judge's failure to articulate good reasons for rejecting the opinion of Plaintiff's treating physician. Plaintiff seeks $2,156.25 for fees at this judicial level. Defendant Commissioner of Social Security ("Commissioner") maintains that its position in pursuing this litigation was substantially justified, and, therefore, Plaintiff is not entitled to fees under the Equal Access to Justice Act ("EAJA"). For the following reasons, Plaintiff's Application for Attorney Fees (ECF No. 28) is **GRANTED**.

### I.  BACKGROUND

Plaintiff brought this civil action, challenging the August 26, 2008 decision of the Administrative Law Judge ("ALJ") denying her application for disability insurance benefits and supplemental social security income. As described in the June 21, 2010 Report and

Recommendation:

> [T]he ALJ found that Plaintiff had several impairments including fibromyalgia; chondromalacia and osteoarthritis of the left knee; degenerative disc disease of the cervical spine; depression and anxiety.  (R. at 9–10.)  Nevertheless, the ALJ determined that Plaintiff's subjective complaints were not supported by the evidence.  (R. at 12–13.)  Additionally, the ALJ found:
>
>> [C]laimant has the functional capacity to lift and/or carry up to 10 pounds occasionally and less than 10 pounds frequently; sit for a total of 6 hours in an eight-hour day and stand and/or walk for a total of 3 hours in an eight-hour day.  She would need a sit/stand option.  She could occasionally stoop and climb stairs.  She can frequently bend.  She could rarely use foot controls.  She is precluded from climbing ladders, working at unprotected heights, crawling or kneeling.  She is precluded from bilateral overhead reaching.  She is limited to simple repetitive 1-2 step tasks in a low stress environment, which in this case is defined as work requiring minimal reading or writing on the job and only limited interaction with the general public.
>
> (R. at 12.)  From this functional capacity assessment, the ALJ concluded that while Plaintiff could not perform her past work, she could perform a significant number of jobs in the national economy.  (R. at 14–15.)  Accordingly, the ALJ determined that Plaintiff was not disabled for the purposes of disability insurance benefits or supplemental social security income.

(Report & Recommendation 6–7, ECF No. 21.)

In her statement of errors, Plaintiff maintained that the ALJ committed three errors. Plaintiff contended that the ALJ failed to assign sufficient weight to Drs. Pali and Hard, the Plaintiff's treating physicians; that the ALJ failed to recognize Plaintiff's hand limitation; and that remand was necessary to more fully address Plaintiff's mental restrictions.

The Commissioner filed a Memorandum in Opposition to Plaintiff's Statement of Error. (*See generally*, Mem. Opp'n., ECF No. 19.)  In the Memorandum, the Commissioner maintained that the ALJ adequately considered Plaintiff's mental work-related limitations and was not required to gather additional evidence on this subject.  (*Id.* at 9–10.)  The Commissioner also

asserted that the ALJ reasonably rejected Plaintiff's allegations of a hand limitation.  (*Id.* at 13.)
With regard to Plaintiff's treating physicians, the issue ultimately necessitating remand, the
Commissioner contended that the ALJ gave good reasons for rejection the opinions of Drs. Hard
and Pali.  (*Id.* at 10–13.)  Citing the ALJ's reliance on Dr. Condon's testimony, other medical
evidence, and Plaintiff's daily activities, the Commissioner maintained that the ALJ was justified
in rejecting portions of the opinions of Drs. Hard and Pali as inconsistent with the record as a
whole.  (*Id.*)

The undersigned issued a Report and Recommendation on June 21, 2010.[1]  The
undersigned found that the evidence did not demonstrate that Dr. Pali was a treating source, and,
regardless of Dr. Pali's status, the ALJ gave proper explanation of his reasons for rejecting Dr.
Pali's opinion.  Nevertheless, the undersigned ultimately recommended remand because the ALJ
failed to give good reasons for rejecting the treating physician opinions of Dr. Hard.  *See* 20
C.F.R. §§ 404.1527(d)(2), 404.927(d)(2) ("We will always give good reasons in our notice of
determination or decision for the weight we give your treating source's opinion.")  Specifically,
the undersigned noted the following:

> Unlike Dr. Pali, Dr. Hard did have an ongoing treatment relationship with
> Plaintiff  following Plaintiff's February 2005 neurological event.  (R. at 109.)  On
> September 29, 2005, after describing the various diagnoses that Plaintiff had
> received, Dr. Hard offered several opinions.  For example, Dr. Hard stated that
> Plaintiff "is disabled by pain . . . [and has] a lot of pain in the neck and back and
> in a number of areas."  (*Id.*)  Dr. Hard's observation and treatment of Plaintiff's
> symptoms led him to conclude that Plaintiff "cannot really do much work . . .
> [can] only sit for about a half hour before she'd have to get up and move around
> and can only stand for about a half hour before she'd have to sit back down."  (R.
> at 110.)  Dr. Hard also opined that Plaintiff's depression makes her pain worse.
> (*Id.*)  Finally, Dr. Hard concluded that Plaintiff "cannot do receptive bending or

---

[1]  The Report and Recommendation provides a more thorough review of the facts and
background of this case.  (*See* Report & Recommendation 1–6, ECF No. 17.)

lifting."  (R. at 110.)

In determining that Plaintiff was not disabled, the ALJ reached several conclusions regarding Plaintiff's pain and ability to work.  Specifically, the ALJ found that "claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible . . ." (R. at 13.)  The ALJ also found that Plaintiff could "lift and/or carry up to 10 pounds occasionally and less than 10 pounds frequently; sit for a total of 6 hours in an eight-hour day and stand and/or walk for a total of 3 hours in an eight-hour day. . . . She can frequently bend." (R. at 11.)

In this case, the ALJ failed to articulate the bases for rejecting the treating opinions of Dr. Hard and, therefore, failed to meet the reason-giving requirement.  Despite the clear tension between Dr. Hard's opinions and the ALJ's ultimate conclusion, particularly with regard to Plaintiff's pain and ability to repeatedly lift and bend, the ALJ decision contains only two passing references to Dr. Hard's opinions.  First, the ALJ cited Dr. Hard's findings with regard to Plaintiff's "migraine equivalent." (R. at 13.)  Second, the ALJ used Dr. Hard's conclusion that Plaintiff could lift 15-20 pounds, without any mention of the surrounding context of that opinion, to rebut Dr. Pali's opinions. (*Id.*)  The ALJ did not state the weight he gave to Dr. Hard's opinions nor did the ALJ describe the factors that led him to disregard many of Dr. Hard's findings.  Accordingly, the undersigned finds that the ALJ erred by failing to articulate good reasons for discounting and/or dismissing the opinions of Plaintiff's treating physician.

(Report & Recommendation 12–14, ECF No. 17.)

Furthermore, the Report and Recommendation described why the ALJ's failure to give

good-reason was not harmless error:

[T]he [*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004)] Court opened the door for considerations of whether a violation of the good-reason requirement was harmless error.  *See id.* at 547–48.  Specifically, *Wilson* considered three possible scenarios that could lead the Court to a finding of harmless error.  *Id.* at 547.  First, the Court indicated that harmless error might occur "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it . . ." *Id.*  Second, the Court noted that if the ALJ's decision was "consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant." *Id.*  Finally, *Wilson* considered the possibility of a scenario "where the Commissioner has met the goal of § 1527(d)(2)-the provision of the procedural safeguard of reasons-even though she has not complied with the terms of the regulation." *Id.*

. . .

> In this case, the undersigned finds that the ALJ's failure to comply with the good-reason requirement was not harmless error.  First, although Dr. Hard's opinions may be inconsistent with other portions of the record, the record contains no indication that Dr. Hard's opinions "are so patently deficient  that the Commissioner *could not possibly* credit it . . ." *Wilson*, 378 F.3d at 547 (emphasis added).  Notably, the ALJ was willing to rely on two of Dr. Hard's findings to support his conclusion.  (*See* R. at 13.)  Second, portions of Dr. Hard's opinions, such as his conclusion that Plaintiff should not repetitively lift or bend, are clearly inconsistent with the ALJ's determination.  Because of Dr. Hard's status as a treating physician, the ALJ was obligated to justify why he rejected those opinions and reached an inconsistent conclusion.  Finally, the ALJ's decision does not provide enough detail regarding the weight he gave to Dr. Hard's opinions for the undersigned to conclude that the goal of the good-reason rule has been met.  Specifically, because the ALJ's opinion only briefly references Dr. Hard's opinions, it is unclear whether the ALJ intended to indirectly attack Dr. Hard's opinions or merely overlooked them.  *See Bowen*, 478 F.3d at 749 ("[T]here is not even a passing reference to [the treating physician's] opinion in the ALJ's decision that allows us to infer that the ALJ intended to indirectly attack it.").  Thus, following recent precedent of the United States Court of Appeals for the Sixth Circuit, the undersigned recommends that this case be remanded because the ALJ failed to comply with the good-reason requirement.

(Report & Recommendation 14–16, ECF No. 17.)[2]

The Commissioner filed Objections to the Report and Recommendation on July 20, 2010.

The Commissioner contended that remand would be "an idle and useless formality," because Dr.

Hard's opinions were accounted for in the ALJ's decision.  (Objections 2–3, ECF No. 23.)

Consequently, the Commissioner maintained that this case was an instant where the ALJ's

decision was consistent with the opinion of the treating physician and it was, therefore, irrelevant

that the ALJ failed to provide good-reasons.  (*Id.* at 3.)

On September 21, 2010, the Court overruled the Commissioner's Objections and adopted

the Report and Recommendation.  The Court specifically held:

---

[2]  Because remand was necessary pursuant to the good-reason requirement, the undersigned found it unnecessary to address Plaintiff's other statements of error.  (*See* Report & Recommendation 16 n.2, ECF No. 17.)

It is true that portions of Dr. Hard's opinions are consistent with, or even less restrictive than, the residual functional capacity the ALJ assigned. For example, Dr. Hard found that the Plaintiff could lift 15 to 20 pounds, whereas the ALJ limited the Plaintiff to up to ten pounds. (R. at 11, 110.) Additionally, the ALJ's requirement that Plaintiff receive a sit/stand option is consistent with Dr. Hard's comments that Plaintiff could neither sit or stand for more than thirty minutes at a time. (*See id.*)

Nevertheless, portions of Dr. Hard's opinions are clearly inconsistent with the ALJ's decision. Dr. Hard's opinion stated that Plaintiff should not do repetitive lifting, and did not provide any weight category that Plaintiff could repetitively lift. (R. at 110.) The ALJ, on the other hand, found that Plaintiff could lift less than ten pounds frequently. (R. at 11.) Dr. Hard also opined that Plaintiff should not do repetitive bending, while the ALJ determined Plaintiff "can bend frequently." (R. at 11, 110.) Moreover, Dr. Hard's report substantiates Plaintiff's complaints of pain; the ALJ decision found that Plaintiff's complaints were not entirely credible.  (R. at 13, 109.)  Finally, Dr. Hard's ultimate opinion that Plaintiff was unable to work is obviously inconsistent with the ALJ's disability finding.

Due to the inconsistencies between Dr. Hard's opinions and the ALJ's decision, the Court finds that this is not a situation were it is irrelevant that the ALJ did not explain his reasons for rejecting a treating physician's opinion. As the Magistrate Judge noted, because the ALJ did not analyze Dr. Hard's contrary opinions, it is unclear whether the ALJ truly rejected them or simply overlooked them. (Report and Recommendation 12–13.) Because it is unclear why the ALJ rejected Dr. Hard's opinions, the Court is unwilling to conclude that the decision is capable of meaningful review. *Blakley*, 581 F.3d at 409 (quoting *Wilson*, 378 at 547) ("[T]he ALJ's failure to follow the Agency's procedural rule does not qualify as harmless error where we cannot engage in 'meaningful review' of the ALJ's decision."). Defendant may ultimately be correct in asserting that remand will not change the ultimate result. This speculation, however, is not the standard the Court must apply in determining whether harmless error exists under the circumstances of this case.

(ECF No. 26 at 7–8.)

Plaintiff filed her current Motion for Attorney Fees on October 21, 2010.  Plaintiff

contends that she is entitled to attorneys fees under the EAJA because the Commissioner's

position was not substantially justified.  In particular, Plaintiff contends the Commissioner was

unreasonable because failure to provide good-reasons is procedural error regardless of whether

substantial evidence supports the ALJ's decision. (Mot. Att'y Fees 2–3, ECF No. 28.) The Commissioner asserts that his position was substantially justified. He contends that because the ALJ's decision was remanded only for the purpose of further articulation, his position was reasonable. (Resp. Appl. Att'y Fees 3, ECF No. 29.) Additionally, the Commissioner emphasizes that the Court's adoption Order found that he may ultimately be correct that remand will not change the result of this case. (*Id.* at 3–4.)

## II. STANDARD OF REVIEW

Pursuant to the EAJA, the Court must award fees and expenses to a party which prevails against the United States in a civil action, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The United States Court of Appeals for the Sixth Circuit has noted the following with respect to determinations under the EAJA:

> The EAJA thus reduces to four requirements: (1) that the fee applicant be a prevailing party; (2) that the government's position not be substantially justified; (3) that no special circumstances make an award unjust; and (4) that the fee applicant file the requisite application within thirty days of final judgment. *Comm'r, INS v. Jean*, 496 U.S. 154, 158, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990).

*Townsend v. Soc. Sec. Admin.*, 486 F.3d 127, 129–30 (6th Cir. 2007).

The Supreme Court has determined that substantially justified means "justified in substance or in the main–that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). In other terms, the Commissioner's position must have a "reasonable basis both in law and fact." *See id.*; *see also Noble v. Barnhart*, 230 Fed. Appx. 517, 519 (6th Cir. 2007) ("[T]he position of the government will be deemed to be substantially justified if there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.") "To be

'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness." *Jean*, 496 U.S. at 158 n.6 (quoting *Pierce*, 487 U.S. at 565–66).

The Commissioner "bears the burden of demonstrating that its position was substantially justified." *Pickering v. Mukasey*, 306 Fed. Appx. 246, 248 (6th Cir. 2009) (*E.W. Grobbel Sons, Inc. v. Nat'l Labor Relations Bd.*, 176 F.3d 875, 878 (6th Cir.1999)).  Nevertheless, "[t]here is no presumption that the government's position is not substantially justified simply because the government loses its case." *Elfelt v. United States*, 149 Fed. Appx. 402, 409 (6th Cir. 2005); *see also Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir.2004) ("The fact that [the Court] found that the Commissioner's position was unsupported by substantial evidence does not foreclose the possibility that the position was substantially justified.").  "The government's 'position' comprehends both its underlying action and its litigation position." *Pickering*, 306 Fed. Appx. at 248; *see also Jean*, 496 U.S. at 161–62 ("While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items.").

## III.  ANALYSIS

A.  <u>Substantial Justification</u>

The central issue in this case is whether the Commissioner's position was substantially justified.[3]  As noted above, the Court remanded this case because the ALJ failed to provide good

---

[3] Defendant does not contest Plaintiff's status as a prevailing party.  *See Shalala v.. Schaefer*, 509 U.S. 292, 300-01 (1993) (holding that claimant is a prevailing party, within the meaning of the EAJA, when they obtain a sentence four remand under 42 U.S.C. § 405(g)); *see also Harris v. Comm'r of Soc. Sec.*, No. 3:09cv092, 2010 WL 3894144, at *1 (S.D. Ohio Sept. 30, 2010) ("[I]t cannot be questioned that the Plaintiff was the prevailing party in an action brought against the Government, given that this Court reversed the denial of benefits and remanded the matter for further proceedings, in accordance with the fourth sentence of § 405(g).").  Additionally, the Court finds no special circumstances, and the Commissioner has

reasons for rejecting the treating physician opinion of Dr. Hard, and, therefore, violated the Commissioner's own procedural requirements.

The Commissioner's regulations clearly provide "[w]e always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion." 20 C.F.R. §§ 404.1527(d)(2), 404.927(d)(2); . The United States Court of Appeals for the Sixth Circuit has emphasized the importance of this procedural requirement. *Wilson*, 378 F.3d at 545 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir.2004)) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion . . . ."). Even when a treating physician renders an opinion on an issue reserved to the Commissioner, the ALJ must still "'explain the consideration given to the treating source's opinion(s).'" *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (quoting SSR 96-5: Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 61 Fed. Reg. 34471, 34474 (Soc. Sec. Admin. July 2, 1996)).

Many courts, including this Court and others within the Sixth Circuit, have considered the issue of substantial justification in similar "good-reason rule" contexts, although with varying reasoning and results. *See, e.g.*, *Hawke v. Astrue*, No. 3:07-cv-108, 2009 WL 961783, at *3 (S.D. Ohio Apr. 8, 2009) (holding that Commissioner was not substantially justified when ALJ failed to provide good-reasons even though other evidence of record potentially supported the ALJ); *Fisk v. Astrue,* No. 3:05-cv-145, 2009 WL 161335, at *3 (S.D. Ohio Jan. 22, 2009) (finding that the Commissioner's position lacked a reasonable basis when "it overlooked the significance of [the] mandatory procedural requirement" of the good-reason rule); *Walker v.*

---

not offered any, that would make an award of attorney fees unjust.

*Astrue*, No. 3:08-CV-151, 2010 WL 925787, at *3 (E.D. Tenn. Mar. 8, 2010) (finding that, when

an ALJ fails to provide good-reasons, "the Commissioner lacks substantial justification to defend

the ALJ's decision unless he can reasonably argue under the applicable case law that the

procedural error was harmless"); *Saal v. Comm'r of Soc. Sec. Admin.*, No. 1:08-cv-347, 2010

WL 2757554, at *3 (W.D. Mich. June 24, 2010) ("The ALJ's failure to articulate his reasoning

with respect to this issue does not, in and of itself, establish that there was no reasonable basis

for the ALJ's decision to deny benefits . . . ."); *Brunel v. Comm'r, Soc. Sec. Admin.*, 2000 WL

1815946, at *2 (1st Cir. 2000) (unpublished decision) (holding, when Commissioner had failed

to provide good-reason, "[w]e cannot deem such disregard for the Commissioner's own

guidelines substantially justified.").

In this case, the undersigned finds that the Commissioner's litigation position was not

substantially justified for three basic reasons.  First, the Commissioner's initial contention that

the ALJ did provide "good reasons" for rejecting Dr. Hard's opinions has no reasonable basis in

law or fact.  In reaching a decision regarding Plaintiff's ability to work, the ALJ stated that he

accepted the medical opinions of Dr. Condon and the state agency, provided general references

to medical findings within the record, and described why he found Plaintiff's complaints of pain

to be not fully credible.  (R. at 11–14.)  The ALJ's decision did not explicitly mention Dr. Hard.

Rather, the decision contained only brief references to selective findings within Dr. Hard's

opinions, and did not state the weight the ALJ gave to his opinion or the ALJ's reasons for

rejecting his findings.  The decision did not discuss Dr. Hard's opinions that Plaintiff could not

"do much work at all," was "disabled by pain essentially," and could not do "repetitive bending

or lifting."  (R. at 109–10.)  Under these circumstances, the undersigned finds that the

Commissioner could not have reasonably believed that the ALJ satisfied the procedural

requirements of the good-reason rule. The Commissioner's position is especially questionable in light of the emphasis of the Sixth Circuit's has placed on the "reason-giving" requirement. *See, e.g.*, *Wilson*, 378 F.3d at 544–46.

Second, upon examination of the record in this case, the Commissioner's contention that the ALJ's error was harmless is also an unreasonable position. An ALJ's failure to give good-reason is rarely a harmless error under Sixth Circuit precedent. *See Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) ("'[W]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.'") (quoting *Wilson*, 378 F.3d at 545); *see also Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 655 ("In *Wilson*, this court held that an ALJ's failure to give 'good reasons' for not crediting the opinion of a treating physician, as required by 20 C.F.R. § 404.1527(d)(2), was not harmless and would almost always require reversal and remand to the Commissioner.") There is at least some room, however, for the Court to consider whether failure to give good-reasons constitutes harmless error. *Wilson*, 378 F.3d at 547 (indicating, without deciding, that a violation of the treating physician rule could constitute harmless error if the relevant opinion is patently deficient; if the ALJ's decision is consistent with that opinion; or if the ALJ has met the goal of the regulation without meeting its exact terms).

None of the three harmless error situations outlined in *Wilson* reasonably applies here. As the undersigned noted in the Report and Recommendation, the record contains no indication

that Dr. Hard's opinions are patently deficient.[4]  (Report & Recommendation 15, ECF No. 21.)

The Commissioner contended in their Objection to the Report and Recommendation that the

ALJ's failure to give good-reasons fell into *Wilson's* second harmless error category,

maintaining that the ALJ's decision was consistent with the opinion's of Dr. Hard.  Nevertheless,

although some of Dr. Hard's opinions align with the ALJ's decision, the Commissioner's

position ignores at least three of Dr. Hard's opinions.  Dr. Hard concluded that Plaintiff could

not repetitively lift or bend, was essentially disabled by pain, and could not do much work.  (R.

at 109–10.)  These opinions are inconsistent with the ALJ's conclusions that Plaintiff could

perform a significant number of jobs, that Plaintiff could frequently lift less than 10 pounds and

could frequently bend, and that Plaintiff's complaints of excessive pain were not credible.

Finally, the Commissioner cannot reasonably assert that the ALJ met the goal of the good-reason

rule or indirectly attacked the opinions of Dr. Hard.[5]  *See Nelson v. Comm'r of Soc. Sec.*, 195

Fed. Appx. 462, 470 (6th Cir. 2006) (finding that, under *Wilson's* third harmless error category,

an ALJ met the goal of providing good-reason by indirectly attacking the relevant opinion).  The

only two references the ALJ made to Dr. Hard's opinions were positive ones used to support his

decision. (R. at 13.)  The ALJ's findings as to Plaintiff's work abilities summarized the medical

records he found relevant, but failed to reach the level of specificity that would provide any

indication that he was attempting to indirectly attack the opinions of Dr. Hard.  (*See* R. at

---

[4] Tellingly, the Commissioner has not argued patent deficiency at any stage in the proceedings.

[5] The Commissioner has not explicitly stated that this category of harmless error applies. Nevertheless, the Commissioner's initial Memorandum in Opposition maintains that the ALJ's decision provided good-reason by referencing other medical evidence that demonstrated Dr. Hard's opinions were overly restrictive.  (Mem. Opp'n 11–12, ECF No. 19.)

13–14.)  Furthermore, the ALJ showed no reservation in attacking the contrary opinions of Dr.

Pali (*see* R. at 13), providing further support for the notion that the ALJ simply overlooked the

contrary opinions of Dr. Hard.

The third reason that the Commissioner's position was not substantially justified is that

his current contentions in opposing Plaintiff's Motion for Attorney Fees are also unavailing.  The

Commissioner now maintains that his position was substantially justified because the ALJ's

error was one of articulation.  (Resp. Appl. Att'y Fees 3, ECF No. 29.)  This Court has already

rejected this line of reasoning.  *Fisk*, 2009 WL 161335, at *3 ("[T]he Commissioner's present

contention that the ALJ's error was primarily one of articulation does not show that the

Commissioner's support for the ALJ was reasonably based in law or fact.") (Report and

Recommendation later adopted).  More importantly, the United States Court of Appeals for the

Sixth Circuit has emphasized the serious nature of the good-reason rule, requiring remand even

when substantial evidence exists.  *See Wilson*, 378 F.3d at 546.  The Commissioner additionally

contends that the Court noted that remand may not ultimately change the result.  Although the

Court did make this comment, under the circumstances of this case, it is irrelevant to the

substantial justification determination.  The point of the Court's statement in the September 21,

2010 Adoption Order was to emphasize that this was not the appropriate harmless error standard.

(ECF No. 26 at 8.)  The Sixth Circuit has found that the unlikelihood that remand will change the

result is not a proper excuse for violating the good-reason rule.  *Id*.  Specifically, the *Wilson*

Court stated:

> A court cannot excuse the denial of a mandatory procedural protection simply
> because, as the Commissioner urges, there is sufficient evidence in the record for
> the ALJ to discount the treating source's opinion and, thus, a different outcome on
> remand is unlikely. "[A] procedural error is not made harmless simply because
> [the aggrieved party] appears to have had little chance of success on the merits

13

anyway."

*Id.* (quoting *Mazaleski v. Treusdell*, 562 F.2d 701, 719 n.41 (D.C. Cir. 1977)).  Accordingly, the Court's prior statement also fails to indicate a reasonable justification for the Commissioner's position.

Ultimately, the undersigned cannot find that the Commissioner has met its burden of demonstrating that his position was substantially justified.  The Court must consider the Commissioner's position as a whole.  As a whole, however, the Commissioner's contentions undervalue the importance of the reason-giving requirement.  Furthermore, applying the relevant Sixth Circuit law, the Commissioner's assertion that this is a case of harmless error does not have a reasonable basis.

B.  <u>Payment of Fees</u>

In her Motion for Attorney Fees, Plaintiff requests $2,156.25 in fees for 17.25 hours of work; a rate of $125 an hour.  (Mot. Att'y Fees 1, ECF No. 28.)  The Commissioner has not objected to Plaintiff's representation of hours or the amount requested.  The Court finds the proposed hourly rate of $125.00 to be reasonable.  *See Morris v. Astrue*, No. 3:09-cv-203, 2010 WL 3522350, at *2 (S.D. Ohio Aug. 17, 2010) ("Congress increased the rate payable for EAJA fees to $125.00 per hour for civil actions filed after March 29, 1996.").  The hours Plaintiff's counsel has submitted are also reasonable.

Plaintiff's Motion requests that the fees be payable to Plaintiff's counsel.  (Mot. Att'y Fees 3, ECF No. 28.)  The Commissioner opposes such payment, asking that the Court allow the government to evaluate whether payment should be made to Plaintiff's attorney.  (Resp. Appl. Att'y Fees 4, ECF No. 29.)  The Supreme Court has recently held "that a § 2412(d) fees award is payable to the litigant and is therefore subject to a Government offset to satisfy pre-existing debt

that the litigant owes the United States." *Astrue v. Ratliff*, --- U.S. ----, 130 S.Ct. 2521, 2524 (2010). Because the Court is unaware of whether Plaintiff owes a debt to the United States, the Court finds that under *Ratliff* the proper course is to award fees directly to Plaintiff and remain silent as to the direction of those fees. *See Bishop v. Astrue*, No. 3:08CV00375, 2010 WL 4279185, at *4 (S.D. Ohio Sept. 29, 2010) (Ovington, M.J., Report and Recommendation subsequently adopted) ("The Government retains the discretion and authority to determine whether Plaintiff owes a debt to it . . . . If no such unpaid debt exists, or if the EAJA fees remain after a government offset, there appears no reason on the present record for the Government not to honor Plaintiff's assignment . . . ."). Accordingly, Plaintiff should be awarded attorney fees under the EAJA as a prevailing party, and the Court should issue no Order regarding the direction such fees must be paid. *See id.* at 5.

## IV.  CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's Motion for Attorney Fees Under the Equal Access to Justice Act (ECF No. 28) and **AWARD** Plaintiff fees in the amount of $2,156.25.

## V. NOTICE

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and

Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


December 16, 2010                          ____/s/ *Elizabeth A. Preston Deavers*_____
                                          Elizabeth A. Preston Deavers
                                          United States Magistrate Judge


16